## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TIM MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CIV-08-135-D |
| | ) | |
| DIRT MOTORSPORTS, INC., a | ) | |
| corporation; WORLD RACING GROUP, | ) | |
| INC., a corporation; and BRIAN CARTER, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is the Defendants' Motion for Summary Judgment [Doc. No. 42]. Plaintiff timely responded to the Motion; Defendants filed a reply and, with Court permission, Plaintiff filed a sur-reply brief. In addition, the parties requested leave to supplement their respective briefs to address the impact of an Oklahoma Supreme Court decision on one of Plaintiff's state law claims. At the direction of the Court, the parties also filed supplemental briefs addressing the impact of *Gross v. FBL Financial Services, Inc.*, ___U.S. ___, 129 S.Ct. 2343 (2009) on Plaintiff's Age Discrimination in Employment Act ("ADEA") claim. Having reviewed the extensive briefs and the exhibits, the Court concludes that Defendants' motion should be denied in part and granted in part, as explained herein.

I. Background:

Plaintiff's claims are based on his contention that his employment with Defendants was wrongfully terminated. Specifically, he alleges that he was terminated because of his age, in violation of the ADEA, 29 U. S. C. § 623, *et seq.*; he also contends his termination violates

Oklahoma public policy, thereby forming the basis for a common law tort claim for wrongful termination, pursuant to *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989).  In addition, Plaintiff asserts claims described as fraud in the inducement, breach of an oral contract, "violation of Oklahoma's public policy against terminating an individual in order to prevent that employee from receiving or accruing benefits which he or she would otherwise earn," and a "malicious wrong intended to cause harm."  Amended Petition[1] at ¶ 15 [Doc. No. 1-11].   Plaintiff also asserts an alternative claim against Defendant Brian Carter ("Carter"), his supervisor, alleging that, if Carter acted "for his own purposes and outside the scope of his authority, such actions would additionally constitute a tortious interference with existing contractual rights and a tortious interference with prospective economic interests."  *Id.* at ¶ 16.  Defendants seek judgment on all asserted claims.[2]

II.  Summary Judgment Standard:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).   To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him.  *Id.*   The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

---

[1] Plaintiff's claims are set forth in a Petition and Amended Petition because this case was originally filed in the District Court of Cleveland County, Oklahoma, and was subsequently removed to this Court.

[2] Although Plaintiff argues in his response that Defendants did not address all claims asserted, the Court agrees with Defendants that their motion encompasses each claim, as more fully explained in this Order.

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, a defendant need not disprove a plaintiff's claim, but must only point to "a lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for him; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. 144 F. 3d at 671-72. Nor is it the Court's responsibility to attempt to find evidence which could support the plaintiff's position. *Id.* at 672.

III. Application:

The parties do not dispute that Plaintiff was hired by Defendant DirtMotorSports, Inc. ("DMS") on or about August 30, 2004 and that he was 50 years old at the time of his hiring; he held the position of Accounting Officer/Controller in the Finance Division of DMS. The parties agree that DMS later changed its name to World Racing Group, Inc. ("World Racing").[3] The parties also agree that, subsequent to Plaintiff's employment with DMS, Brian Carter ("Carter") was hired as its Chief Executive Officer and Chief Financial Officer, and was Plaintiff's direct supervisor. It is not disputed that Plaintiff's employment was terminated on or about March 12, 2007.

DMS is engaged in the promotion of competitive dirt track racing. It owns and operates seven dirt racing tracks, and it sanctions sprint car and modified dirt track auto racing. While employed by DMS, Plaintiff worked at its Norman, Oklahoma office. Plaintiff agrees that his job

---

[3]Although both DMS and World Racing are named as defendants, no claims are asserted against them separately.

responsibilities included hiring and training the DMS accounting staff, supervising its accounting department, preparing and reviewing financial materials, managing DMS's relationship with its independent auditors and tax advisors; and paying certain operating expenses. The parties also agree that Plaintiff's responsibilities required him to communicate with vendors and auditors as well as with DMS personnel.

In 2006, DMS decided to close the Norman office and relocate the employees working there to its office in Charlotte, North Carolina. During this same time period, Plaintiff was offered a position with another company, and told Carter about that offer. The parties agree that, in a May 2006 discussion, Carter asked Plaintiff to consider remaining with DMS, which would require him to relocate to Charlotte. At the time, Carter asked Plaintiff what compensation he would require to do so. Plaintiff gave Carter a post-it note listing "$120,000 annual salary, 5% annual increase, 30,000 common stock, 100,000 stock options, three-year contract." Post-it note, Plaintiff's Ex. 22; Plaintiff's dep., Defendants' Ex. 1, p. 233, lines 3-10. According to Plaintiff, Carter replied, "I don't know," and stated "I think I can make this happen, but it's going to take me a while...I'm going to have to go call the chairman of the board." *Id.* at lines 20-24. Plaintiff admits that he was waiting for Carter to "finalize" what they had discussed at that time. Plaintiff's dep., Defendants' Ex. 1, p. 235, lines 22-25.

The record reflects that, more than six months later, Carter and Plaintiff executed a document entitled, "Relocation Offer;" a copy of the contract (the "Relocation Agreement"), dated October 5, 2006 and accepted by Plaintiff on November 29, 2006, is submitted as Defendants' Ex. 8. The Relocation Agreement explained the salary and benefits Plaintiff would receive upon his relocation

to North Carolina, including a salary of $3,846.15 every two weeks, and medical and dental insurance. It further provided that his salary would be increased to $115,000 annually upon his completion of certain identified projects by the deadlines stated in the Relocation Agreement. The Relocation Agreement also provided that he would be reimbursed for moving expenses up to a certain amount, and that he would receive a temporary housing allowance. In addition, the Relocation Agreement provided that Plaintiff would receive future stock options in specified amounts for the years 2007 through 2009. The Relocation Agreement also provided that, if Plaintiff voluntarily terminated his employment within 12 months after his relocation, he would refund to DMS all amounts received as relocation reimbursement; it also provided that, if Plaintiff were terminated by DMS during that 12-month period for any reason other than cause, DMS would continue to compensate him at his current salary "through the one year anniversary of the employee's relocation date." Defendants' Ex. 8, p. 2.

Although Plaintiff executed the Relocation Agreement, he later told Carter he was "not sure" he was "interested in working in Charlotte at all." *See* March 2, 2007 email from Plaintiff to Carter, submitted as Defendants' Ex. 3. It is not disputed that Plaintiff did not relocate to Charlotte; his employment was terminated on March 12, 2007. As a result, he did not receive the benefits set forth in the Relocation Agreement. According to Plaintiff, he received accrued vacation pay, but did not receive any severance benefits. Plaintiff's affidavit, Plaintiff's Ex. 11.

Defendants contend that Plaintiff's termination had nothing to do with his age and that he was terminated because of his abrasive management style and his intimidating manner of communicating with others. Defendants submit six email communications as examples of Plaintiff's

abrasive or intimidating manner of dealing with subordinates, peers, and his supervisor. Defendants'

Ex. 2. According to Carter, Plaintiff exhibited the same abrasive style in meetings and telephone

conversations. Carter affidavit, Defendants' Ex. 5, ¶ 9. Several employees complained to Carter

about Plaintiff's manner of communicating with employees and vendors. *Id.*, ¶¶ 7, 8 and 11.

According to Carter, Plaintiff's "intimidating management style" made it difficult for employees to

work with him and seriously disrupted the work environment at DMS, and his abrasive manner

became more evident in the months preceding his March, 2007 termination. *Id.*, ¶¶ 10 and 11.

Although Carter conceded that Plaintiff continued to adequately perform the "technical aspect" of

his job, he was terminated because of his "abrasive management style." Carter affidavit,

Defendants' Ex. 5, ¶¶ 12 and 13.

Carter testified that, on several occasions, he told Plaintiff that his management style created

problems and should be changed; however, he admits that there were no written disciplinary

memoranda or other documents reflecting these conversations. Carter dep., Plaintiffs' Ex. 5, p. 62,

lines 16-20; p. 66, lines 9-16. Plaintiff testified that he was aware his attitude toward other

employees was interpreted as anger. Plaintiff's dep., Defendants' Ex. 1, p. 149, lines 10-25; p. 150,

lines 1-17. Communications between Plaintiff and Carter during the time period preceding

Plaintiff's termination reference their discussions regarding Plaintiff's management style. *See* email

communications submitted as Defendants' Reply Ex. 1.

It is undisputed that Plaintiff received several salary increases during his DMS employment.

On or about June 1, 2005, his salary was increased to $75,000 per year; on January 10, 2006, he

received a bonus of $5,500; on January 16, 2006, his salary was increased to $100,000 per year.

Carter dep., Plaintiff's Ex. 5, p. 67, lines 18-25; p. 68, lines 1-25.

The March 12, 2007 letter of termination from Carter to Plaintiff does not state specific reasons for the termination.  Plaintiff's Ex. 18.   After Plaintiff applied for unemployment compensation, the Oklahoma Employment Security Commission ("OESC") asked DMS to state the reason for the termination; it replied that his "position ended because we moved the business out of state.  He was offered a position out of state, but declined it."  Plaintiff's Ex. 16.  In response to Plaintiff's Equal Employment Opportunity Commission ("EEOC") complaint, DMS stated the reasons for Plaintiff's termination were his intimidating management style and his gross lack of effective interpersonal skills.  Plaintiff's Ex. 19, pp. 2-3.  DMS also mentioned that it had discovered "some key financial information had been irretrievably lost due to [Plaintiff's] actions regarding audit records."  *Id.* at p. 3.  DMS denied that Plaintiff's termination was in any manner related to his age.

### III.  ADEA analysis:

Pursuant to the ADEA, it is unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U. S. C. § 623(a)(1).  According to the Supreme Court:

> To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the "but-for" cause of the employer's adverse decision.

*Gross v. FBL Financial Services, Inc.*, 557  U.S. __, 129 S.Ct. 2343, 2352 (2009).

When assessing the burden of proof in ADEA claims, the Tenth Circuit Court of Appeals

has consistently applied the *McDonnell Douglas* [4] burden-shifting analysis applicable to Title VII claims.  *See, e.g., Riggs v. AirTran Airways, Inc.*, 497 F. 3d 1108, 1114-15 (10th Cir. 2007);   *Ellis v. United Airlines, Inc.*, 73 F. 3d 999, 1004 (10th Cir. 1996).  According to that analysis,  Plaintiff has the burden of establishing a *prima facie* case of employment discrimination based on his age;  if he does so, Defendants must articulate a legitimate, non-discriminatory reason for their actions and, if they do so, Plaintiff then  has the burden of proving that such reason was a mere pretext for discrimination.  *McDonnell Douglas,*  411 U.S. at 802-04.  Defendants' burden is one of production only; the ultimate burden of proving discrimination remains at all times with the plaintiff.  *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981); *McDonnell Douglas*, 411 U.S. at 804-05.  Once a non-discriminatory reason has been advanced, to avoid summary judgment at this stage Plaintiff must offer evidence sufficient to create a genuine issue of material fact with regard to whether the articulated reason for the adverse employment decision is pretextual; unsupported conclusory allegations are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein.  *Cone v. Longmont United Hospital Ass'n*, 14 F. 3d 536, 530 (10th Cir. 1994).

The Supreme Court's recent decision in *Gross* rejected the argument that an ADEA claimant can satisfy his burden of proof by showing that age was a motivating factor underlying his termination, and expressly held that a plaintiff must prove that "age was the 'but-for' cause of the employer's adverse decision" in a claim alleging that the adverse employment decision was based on "mixed motives."  *Gross,* 129 S. Ct. at 2352.  The Court stated:

---

[4]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

> The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

*Id.*   The Court did not discuss the effect of its holding on the *McDonnell Douglas* burden-shifting analysis in an ADEA case, but observed in a footnote that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas*...utilized in Title VII cases is appropriate in the ADEA context."  129 S. Ct. at 2349 n. 2.

In his supplemental brief in this case, Plaintiff argues that the Tenth Circuit has previously held that the ADEA requires a "but for" causation standard at trial.  He also argues *Gross* does not preclude application of the *McDonnell Douglas* analysis, and cites several court decisions which have so held.   According to Defendants,  *Gross* strengthens their summary judgment argument, contending that Plaintiff cannot satisfy the "but for" causation requirement.

The Court has reviewed the decisions cited by the parties, as well as others revealed in the Court's own research.  The Tenth Circuit has not yet considered whether *McDonnell Douglas* continues to be applicable in ADEA cases;[5] it appears that the only court of appeals to have done so is the Sixth Circuit, which held that *McDonnell Douglas* remains applicable to claims based on circumstantial evidence of age discrimination.  *Geiger v. Tower Automotive*, __ F. 3d __, 2009 WL 2836538 (6th Cir. Sept. 4, 2009).   District courts in the Tenth Circuit have also reached that conclusion.   *See, e.g., Fuller v. Seagate Technology*, __ F. 3d __, 2009 WL 2568557, at *8 (D. Colo. Aug. 19, 2009); *Misner v. Potter*, 2009 WL 1872598, at *2 n. 2 (D. Utah June 26, 2009)

---

[5]In *Thompson v. Weyerhauser Co.*, __ F. 3d __, 2009 WL 2902069 (10th Cir. Aug. 26, 2009), the Circuit held that *Gross* does not preclude an ADEA claim based on an alleged pattern or practice of age discrimination.  However, the decision does not discuss *McDonnell Douglas.*

(unpublished opinion).  Other district courts have continued to apply *McDonnell Douglas*, finding that *Gross* does not preclude its application.  *See, e.g., Ferruggia v. Sharp Electronics Corp.*, 2009 WL 2634925, at *3 (D. N. J. Aug. 25, 2009) (unpublished opinion); *Poalillo v. Specialty Floorings Sys.*, 2009 WL 2426139, at *2 (E. D. Pa. Aug. 5, 2009)(unpublished opinion); *Bell v. Raytheon Co.*, 2009 WL 2365454, at * 4-5 (N. D. Tex. July 31, 2009)(unpublished opinion); *Butler v. Louisiana Dept. Of Health and Hospitals*, 2009 WL 2382556, at *5 n. 29 (M.D. La. July 31, 2009) (unpublished opinion).  At least two courts found questionable the application of  *McDonnell Douglas*  to ADEA cases after *Gross*.   *Woehl v. Hy-Vee, Inc.*, 2009 WL 2105480 (S.D. Iowa July 10, 2009); *Wagner v. Geren*, 2009 WL 2105680 (D. Neb. July 9, 2009).  However, neither decision held that  the *McDonnell Douglas* framework no longer applies, and both found it unnecessary to reach the issue.

Having reviewed the decisions,  the Court agrees that *Gross* does not preclude application of  the *McDonnell Douglas* burden shifting analysis to an ADEA claim based on circumstantial evidence.  The Court agrees that, as observed in *Ferruggia*, the "majority of courts that have addressed this issue post-*Gross* continue to apply the *McDonnell Douglas* framework at the summary judgment stage."  2009 WL 2634925, at * 3.  Accordingly, the Court will apply that analysis to Defendants' motion.

However, the Court also agrees that *Gross* must be interpreted as "elevating the quantum of causation required under the ADEA." *Fuller,*  __ F. Supp. 2d __, 2009 WL 2568557, at * 14.  Thus, "[a]fter *Gross*, it is no longer sufficient for Plaintiff to show that age was a motivating factor in Defendant's decision to terminate him.  Instead,  Plaintiff must present evidence establishing that

age discrimination was the 'but for' cause" of that termination.  *Id.* (citing *Gross*, 129 S. Ct. at

2350); *Ferruggia,* 2009 WL 2634925, at *3 (the majority of courts have held that, while *McDonnell*

*Douglas* applies at the summary judgment stage, "at trial" the plaintiff bears the burden of proving

that "discrimination was the but for cause" of the adverse employment action).

A.   Plaintiff's *Prima Facie* Burden:

Defendants contend that they are entitled to judgment on Plaintiff's ADEA claim because

he cannot establish a *prima facie* case.  They further contend that, even if he could do so, they are

entitled to judgment because he cannot show that Defendants' stated reason for terminating Plaintiff

is a mere pretext for age discrimination.  Applying  *Gross*, they argue that Plaintiff cannot show that

discrimination was the "but for" cause of his termination.

To establish a *prima facie* case of age discrimination based on employment termination  in

violation of the ADEA,  the plaintiff must show that (1) he was within the protected age group at

the time of his discharge; (2) he was doing satisfactory work; (3) he was discharged; and (4) his

position was filled by a younger person.  *Rivera v. City and County of Denver*, 365 F. 3d 912, 920

(10th Cir. 2004) (citing *McKnight v. Kimberly Clark Corp.*, 149 F. 3d 1125, 1128 (10th Cir. 1998));

*Young v. Cobe Laboratories, Inc*.,1998 WL 184449, at **4 (10th  Cir. Apr. 17, 1998) (unpublished

opinion) (citing *Gonzagowski v. Widnall*, 115 F. 3d 744, 749 (10th Cir.1997)). Plaintiff's *prima facie*

burden is "not onerous."

In this case, the parties agree that Plaintiff was in the protected age group at the time of his

termination; in fact, as Defendants point out, he was 50 years old at the time he was hired.

Defendants do not dispute Plaintiff's contention that Defendant was replaced by a younger

11

individual.  Thus, the parties agree that three of the four elements of Plaintiff's *prima facie* burden are satisfied.   The parties' dispute focuses on the proof required  to satisfy the second element. Defendants contend that Plaintiff cannot show he was satisfactorily performing his work because he was terminated for unsatisfactory performance based on his conduct toward coworkers, supervisors and third parties.   Plaintiff argues, however, that satisfactory job performance is not the proper standard; instead, he contends that the second element of his *prima facie* burden requires that he show he was "qualified" to perform his job.  As Plaintiff points out, Defendants concede that Plaintiff had the skills to perform the technical requirements of his position; the only criticisms are limited to his lack of interpersonal skills.

A close review of ADEA decisions shows that, where discrimination is based on a failure to hire,  promote or transfer, a plaintiff must show that he was qualified for the position at issue as an element of his *prima facie* case.  *See, e.g., Kendrick*, 200 F. 3d at 1226.   In contrast, cases asserting age discrimination based on *termination* require a *prima facie* element of satisfactory job performance.  *See, e.g., Bolton v. Sprint/United Management Co.*, 220 F. App'x 761, 766 (10th Cir. 2007) (unpublished opinion) (citing *Rivera*, 365 F. 3d at 902); *McKnight,* 149 F. 3d at 1128; *Cone*, 14 F. 3d at 529.   Notwithstanding this distinction, the Tenth Circuit has held that, where the employer's proffered nondiscriminatory reason for the termination is unsatisfactory job performance, the validity of that contention should not be considered in a summary judgment motion challenging the plaintiff's ability to establish the second element of a *prima facie* case.  *Bolton*, 220 F.App'x at 766-67 (citing *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115 (10th Cir. 1991).  According to the Circuit:

> [C]oncluding that plaintiffs "did not establish a *prima facie* case based on the reasons for their discharge raises serious problems under the *McDonnell Douglas* analysis" because it "frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual and/or that age was the determining factor."

*Bolton*, 220 F. App'x at 767 (quoting *MacDonald*, 941 F.2d at 1119). According to the Circuit:

> We therefore held that a plaintiff may meet the second element of a "*prima facie* case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time."

*Id.* (quoting *MacDonald*, 941 F.2d at 1121); *see also Wagoner v. Pfizer, Inc.*, 2009 WL 304340 (D. Kan. Feb. 9, 2009) (unpublished opinion). Instead, the Circuit has held that, in the summary judgment context, evidence that the employer terminated the plaintiff for unsatisfactory job performance should be considered at the final stage of the *McDonnell Douglas* burden-shifting analysis in which a plaintiff must show that the proffered nondiscriminatory reason for his termination is pretextual. *Id.* at 767-68.

In this case, Defendants do not dispute that Plaintiff was qualified for his job at the time he was hired and that, during his employment, Plaintiff satisfactorily performed the technical requirements of his job. Although Defendants contend that Plaintiff's performance was unsatisfactory for other reasons, under *Bolton* and *McDonald,* that evidence should not be considered with regard to the second element of Plaintiff's *prima facie* burden and must instead be evaluated in connection with his claim of pretext. Accordingly, Plaintiff's *prima facie* burden is satisfied for purposes of Defendants' summary judgment motion.

B. Defendants' nondiscriminatory reasons for the termination:

Having determined Plaintiff has presented sufficient evidence to satisfy his *prima facie*

13

burden, the Court must next consider whether Defendants have presented nondiscriminatory reasons for the termination. *McDonnell Douglas*, 411 U.S. at 802-04. Defendant's burden is one of production only, and is "exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F. 3d 1160, 1173 (10th Cir. 2007). The record establishes that Defendants have met their burden in this case by presenting evidence that Plaintiff was terminated because of his abrasive management style or lack of interpersonal skills. Thus, the burden shifts to Plaintiff to submit sufficient evidence to support a claim that these proffered reasons for his termination are a mere pretext for age discrimination.

C.  Plaintiff's burden of showing pretext:

"Under Tenth Circuit precedent, pretext may be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Bryant v. Farmers Ins. Exchange*, 432 F. 3d 1114, 1125 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.,* 108 F. 3d 1319, 1323 (10th Cir.1997)). A plaintiff can make a showing of pretext with evidence that the defendant's stated reason for termination was false. *Id.* (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F. 3d 1220, 1230 (10th Cir.2000)). A plaintiff can also avoid summary judgment on the issue of pretext by offering evidence that the defendant's proffered business justification is "incoherent, weak, inconsistent or contradictory." *Paup v. Gear Products, Inc.*, 2009 WL 1740512, at *9 (10th Cir. June 19, 2009) (citing *Young v. Dillon Co.*, 468 F. 3d 1243, 1250 (10th Cir. 2006).

In this case, Plaintiff argues that there are sufficient disputed material facts to preclude

summary judgment on this issue.   First, Plaintiff contends that Defendants' reasons are suspect because, despite the concern regarding his lack of interpersonal skills, he never received any written disciplinary memoranda addressing that issue.  Although the evidence in the record shows that Carter discussed this issue with him, Plaintiff contends that he was not counseled about the issue until shortly before his termination.  In fact, he argues that he received salary increases during the same period in which Defendants now contend they were dissatisfied with his conduct.

Second, Plaintiff argues that Defendants have offered inconsistent reasons for his termination because they did not state a reason in his termination letter, and they advised the OESC  that Plaintiff was terminated because he declined relocation to North Carolina.  Plaintiff's Exs. 16 and 17.  Plaintiff notes that these communications did not mention his lack of interpersonal skills or cite any performance deficiencies.  Although this reason was given to the EEOC in response to Plaintiff's complaint, Plaintiff notes that Defendants also told the EEOC that his termination was partly based on the disappearance of records reflecting certain financial data  for which Plaintiff was responsible.  Plaintiff's Ex. 19.   Plaintiff argues that Carter later admitted that this latter contention was untrue.

 Defendants contend that they have not offered inconsistent  reasons for the termination. According to Defendants,  Plaintiff's unsatisfactory job performance was not disclosed to the OESC because they had agreed not to challenge Plaintiff's request for unemployment compensation. With regard to the termination letter, Defendants agree that it does not mention a reason for the termination; however, they point out that it refers to Carter's previous conversation with Plaintiff in which he explained those reasons. Plaintiff's Ex. 18.   Defendants offer evidence that Carter had

previously discussed with Plaintiff his concerns about the manner in which Plaintiff dealt with others. Carter Dep., Defendants' Ex. 2, p. 112, lines 12 through 15. Those discussions are also referenced in email communications. Defendants' Ex. 1.

With regard to the missing financial data, Defendants deny that this contention is untrue. As Defendants point out, Carter testified that he remained concerned about Plaintiff's role in the loss of financial data; however, he had no evidence to support his belief that Plaintiff was responsible. Carter dep., Defendants' Ex. 2, p. 113, lines 1-14.

Defendants also contend that Plaintiff's receipt of salary increases does not establish pretext, as they offer evidence to show those raises were given to Plaintiff and other similarly situated officers after their job titles were changed; according to Defendants, these were not merit increases. *Id.*, pp. 110, lines 1-25; 111, lines 1-2.

The fact that an employer offers different reasons for an employee's termination does not mandate a finding of pretext, nor does it preclude a determination that the termination was based on non-discriminatory reasons. *Jaramillo v. Colorado Judicial Dep't*, 427 F. 3d 1303, 1310 (10th Cir. 2005). Instead, if the employer's position changed, courts look to the timing of its change in position and whether there is an evidentiary basis for its new rationale. *Id.* In this case, Defendants have offered evidence explaining the various reasons given for the termination, and those reasons were provided to the EEOC in response to Plaintiff's discrimination charge.

Nevertheless, the Court concludes that the evidence reflects a material fact dispute regarding the issue of pretext. Although the evidence in the record supports Defendants' contention that Plaintiff's lack of interpersonal skills was the reason for his termination, Plaintiff has offered

sufficient evidence from which a reasonable jury could conclude that those reasons are pretextual; his evidence is sufficient to avoid summary judgment on this issue.

Defendants further argue that, even if Plaintiff has submitted some evidence to support a claim of pretext, he has wholly failed to submit any evidence from which a reasonable jury could conclude that his termination was related to his age.  As Defendants point out, Plaintiff was 50 years old when hired, and Plaintiff offers no evidence that  his age was mentioned in connection with any criticism of his work or in his manner of dealing with others.  Furthermore, Defendants stress that the evidence fails to show they terminated more employees in the protected age group than younger employees.    Defendants argue that, because Plaintiff has failed to submit evidence from which a jury could infer that his termination was based on age discrimination, they are entitled to judgment as a matter of law.

As Plaintiff correctly argues, however, the Tenth Circuit has held that, when attempting to show pretext at the summary judgment stage,  an ADEA  plaintiff is not required to "offer any evidence of actual discrimination."  *Bryant*, 432 F. 3d at 1125.  Instead,  "at the summary judgment stage...once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment."  *Id.*  Accordingly, "in some cases...a successful attack on part of the employer's legitimate, nondiscriminatory explanation is enough to survive summary judgment even if one or more of the proffered reasons has not been discredited." *Bryant*, 432 F. 3d at 1127, n 6 (citing *Jaramillo*, 427 F. 3d 1303 at 1310).

Defendants argue that, under *Gross*, Plaintiff must prove that he would not have been

terminated "but for" age discrimination.  According to Defendants, there is insufficient evidence to support that conclusion.  However, the Tenth Circuit's decisions preclude summary judgment on this basis.  Plaintiff has submitted some circumstantial evidence which, albeit limited,  constitutes more than a "mere scintilla," and is thus sufficient to preclude summary judgment on the issue of pretext.  Accordingly, under the requirements of *Bryant*, Defendants' summary judgment motion on Plaintiff's ADEA claim must be denied.  This conclusion  does not, of course, relieve Plaintiff of the ultimate burden at trial of proving that, but for age discrimination, he  would not have been terminated.

IV.  Plaintiff's state law claims:

    A. Plaintiff's *Burk* claim:

    Defendants seek judgment on Plaintiff's pendent state tort claim based on *Burk*.  They argue that, because they are entitled to judgment on his ADEA claim, they are also entitled to judgment on the *Burk* public policy claim because both are based on the contention that Plaintiff's termination was motivated by age discrimination.  Inasmuch as the Court has concluded that Plaintiff's ADEA claim survives summary judgment, Defendants' motion is also denied as to the *Burk* claim.[6]

    B.  Plaintiff's breach of oral contract claim:

    Defendants also seek judgment on Plaintiff's claim that his termination constituted a breach of an oral contract of employment and his claim that he relied on an oral promise to his detriment.  These claims are based on Plaintiff's contention that, in May of 2006, he was offered a job by

---

[6]Accordingly, the Court need not address Plaintiff's contention that his ADEA and *Burk* claims are subject to different standards of proof.   Whether the decision in *Gross* impacts Plaintiff's burden of proof on these two claims is a matter that may be considered in connection with the Court's instructions to the jury.

Defendants' former employee; Carter learned of the offer and allegedly asked Plaintiff what salary he would require to stay in Defendants' employ.  Plaintiff contends that Carter's response created an oral agreement to continue Plaintiff's employment.

To establish the existence of a binding oral contract, Plaintiff must establish that 1) the parties were capable of contracting; 2) they consented to the terms; 3) the contract had a lawful object, and 4) there was sufficient consideration.  Okla. Stat. tit. 15 § 2 (1991).  Under Oklahoma law, the requisite consent must be "mutual and communicated by each to the other."  Okla. Stat. tit. 15 § 51.  Mutual consent is the result of an offer and an unequivocal acceptance.  *See, e.g., National Outdoor Advertising Co. v. Kalkhurst*, 418 P. 2d 661, 664 (Okla. 1966).  An acceptance must be "absolute and unqualified."  Okla. Stat. tit. 15 § 71.   Thus, to create a binding contract, there must be "a definite and unqualified proposal by one party," and the offer must be "unconditionally and without qualification accepted by the other party."  *Griffin v. Kingfisher Mill & Elevator Co.*, 32 P. 2d 63, 66 (Okla. 1934).

The evidence before the Court establishes that no binding oral agreement was reached between Plaintiff and Carter.  There is no evidence that Carter unconditionally accepted the terms suggested by Plaintiff.  In fact, the undisputed evidence is that Carter did not know if he could do so and that he would have to discuss Plaintiff's proposed terms with the chairman of the board.  As Defendants suggest, the communication between Plaintiff and Carter could, at most, be viewed as negotiations.  There is no evidence that Carter or anyone else accepted the terms suggested by Plaintiff.  The Court concludes that, as a matter of law, there was no enforceable oral contract. As a result, there was no oral promise by Carter on which Plaintiff could have relied to his detriment.

Accordingly, Defendants are entitled to judgment on Plaintiff's claim of breach of an oral contract and detrimental reliance.  To that extent, Defendants' Motion is GRANTED.

      C. Plaintiff's promissory estoppel claim:

      In response to Defendants' motion, Plaintiff argues that an oral contract was performed via promissory estoppel.  The elements required to establish promissory estoppel include 1) a clear and unambiguous promise; 2) foreseeability by the promisor that the promisee would rely upon it; 3) reasonable reliance by the promisee to his detriment; and 4) hardship or unfairness can be avoided only by enforcing the promise.  *Barber v. Barber*, 77 P.3d 576, 579 (Okla. 2003).  Because Plaintiff cannot show that a clear and unambiguous promise was made by Defendants, he cannot establish the essential elements of this claim, and Defendants are entitled to judgment on the same.  In this regard Defendants' Motion is GRANTED.

      D. Plaintiff's "malicious wrong" claim:

      As Defendants correctly argue, the Tenth Circuit Court of Appeals has held that a claim alleging  a "malicious wrong," also known as  *prima facie* tort, is not actionable in an employment discrimination case.  *Merrick v. Northern Natural Gas Co.*, 911 F2d 426, 433 (10th Cir. 1990).  The Circuit held that such cause of action is limited to malicious infliction of injury to one's business or property interests.  *Id.*  The Court agrees with Defendants that Plaintiff has not offered evidence to support such a claim, nor is there evidence in the record that could arguably support that claim.

      Although Plaintiff argues that this tort could arguably be based on the facts he alleges, he offers no persuasive authority to support his argument.  In any event, the evidence  does not warrant such a claim.  To the extent that Plaintiff seeks to assert that claim, Defendants' Motion is

GRANTED.

Plaintiff also argues in his response that, even if a malicious wrong claim is not proper, this claim can be construed as based on fraudulent inducement and that, because Defendants did not expressly address this claim, judgment is improper. According to Plaintiff's theory, he was induced to remain employed by DMS through Carter's allegedly false promise to continue his employment in 2006; he contends that, in reliance on the alleged fraudulent promise, he declined another offer of employment.

The Court agrees with Defendants that Plaintiff expressly labeled this cause of action as based on a "malicious wrong." Plaintiff cannot avoid judgment by arguing that Defendants failed to address a cause of action which Plaintiff did not assert. Furthermore, even if Plaintiff had alleged the cause of action on which he now purportedly relies, the evidence establishes that he could not prevail on that claim as a matter of law.

The Oklahoma Court of Appeals has held that an employer has a duty to "assure the information disclosed to a prospective employee during the pre-hiring/recruitment process is not false or misleading." *Stehm v. Nordam Group, Inc.* 170 P. 3d 546, 549 (Okla. Civ. App. 2007). The elements required to prove a claim based on an alleged breach of that duty are: 1) the employer misrepresented or concealed a material fact during the hiring process; 2) the employer had knowledge of the falsity of the fact or lacked reasonable grounds for believing it to be true; 3) the employer intended to induce the employee's reliance; 4) the employee justifiably relied upon the misrepresentation; and 5) damages resulted. *Id.* at 550.

Plaintiff has not alleged that Defendants concealed from him any material facts in connection

21

with their discussions regarding Plaintiff's potential relocation to North Carolina, the negotiations regarding Plaintiff's salary and other benefits demands regarding relocation, or any other matters in connection with the Relocation Agreement.  Plaintiff points to no evidence of any fact concealed by Carter or anyone else at DMS that would support a fraudulent inducement claim.  Thus, even if such a claim is arguably presented, Defendants are entitled to judgment as a matter of law.

E.  Plaintiff's emotional distress claim:

To the extent that Plaintiff's allegations can be construed as asserting a claim  for intentional infliction of emotional distress, Defendants also seek judgment on that claim.  In his response brief, however, Plaintiff expressly states that he "does not make a claim of intentional infliction of emotion distress."  Response Brief, p. 29, n. 18.  Accordingly, this issue is moot and need not be addressed.[7]

F.  Plaintiff's tortious interference claim:

Plaintiff also argues that Defendants failed to address his claim for tortious interference.  As Defendants point out, this claim is pled in the alternative against Carter, as the Amended Petition alleges "[i]f, in the alternative, Mr. Carter acted for his own purposes and outside the scope of his authority, such actions would additionally constitute a tortious interference." Amended Petition at ¶ 16.  In this case, however, Plaintiff points to no evidence that Carter was acting in any capacity other than as Chief Executive Officer of DMS in connection with his communications with Plaintiff. The record contains no evidence that could arguably support even an inference that Carter was

---

[7]Plaintiff suggests, instead, that he may seek damages for emotional distress allegedly resulting from Defendants' tortious conduct.  To the extent that Plaintiff pursues a *Burk* claim, such damages may be recoverable. However, that issue is best reserved for consideration of the appropriate instructions to be given to the jury.

acting outside the scope of his employment.   Defendants are entitled to judgment on this alternative claim.

G.  Plaintiff's breach of written contract claim:

 Plaintiff contends that Defendants failed to address his claim for breach of a written contract.  As Defendants point out, however, the amended complaint does not assert a claim for breach of a written contract. In his response brief, however, Plaintiff contends that the October 5, 2006 Relocation Agreement was breached by Defendants because he did not receive one year's salary after the date of relocation.   According to Plaintiff, despite the fact that he never relocated to North Carolina, he is nonetheless entitled to a severance payment consisting of one year's salary "from the employee's relocation date."  Exhibit 8, p. 2.  Plaintiff contends that, because "relocation date" is not  defined in the agreement, it must be interpreted to require Defendants to pay him the one year's salary.

The Court has carefully reviewed the Relocation Agreement and concludes that Plaintiff's interpretation is without merit.  The agreement addresses the compensation and benefits to be provided if the employee relocates to North Carolina.   The record reflects that, at the time it was presented to Plaintiff, he was considering whether to relocate to Defendants' North Carolina office after the Norman office closed.   The agreement, when read in its entirety, reflects the benefits that would accrue to Plaintiff if he relocated to North Carolina.  For example, it provides for reimbursement for moving costs plus incidental expenses incurred in connection with the anticipated move; maximum amounts are specifically set out. Defendants' Ex. 8, p. 1. Furthermore, it provides for payment of hotel expenses for a period of fourteen days in Charlotte, North Carolina,  as a

temporary housing allowance while Plaintiff is seeking housing there.  *Id.*

The agreement further provides for certain stock options which would be exercisable in the future, specifically, in 2007, 2008 and 2009.  Defendants' Ex. 8, p. 1.  The agreement also provides that, if Plaintiff terminated his employment during "the 12 months subsequent to relocation," he would refund to Defendants all amounts received by him as relocation reimbursement.

Finally, the agreement includes the sentence which Plaintiff contends entitles him to receive one year's salary upon his involuntary termination: "If employer terminates employee for any reason other than for cause, employer shall continue to compensate employee at his current salary through the one year anniversary of the employee's relocation date."  Defendant's Ex. 8, p. 2.

Contrary to Plaintiff's argument, the absence of a definition of "relocation date" does not support his claim for compensation.  The sentence on which he relies clearly states that the date in question is "the <u>employee's</u> relocation date." (Emphasis added).  Plaintiff did not have a relocation date because he never relocated to North Carolina.  The Court finds Plaintiff's argument to be wholly without merit.  To the extent that Plaintiff's complaint can be interpreted as asserting a claim for breach of a written contract on the theory that Plaintiff is entitled to recover a benefit not received under the Relocation Agreement, Defendants are entitled to judgment as a matter of law on that claim.

V.  Conclusion:

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 42] is GRANTED in part and DENIED in part.  The Motion is DENIED as to Plaintiff's ADEA claim and his *Burk* claim based on unlawful termination based on his age.  The Motion is GRANTED

as to all other  claims asserted by Plaintiff.  The case will proceed accordingly.

IT IS SO ORDERED this  __15th__  day of September, 2009.

_____

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE